**Mary Lou MIKULA, Appellant**

v.

**ALLEGHENY COUNTY OF PENNSYLVANIA.**

No. 07–4023.

United States Court of Appeals, Third Circuit.

Initially Submitted Pursuant to Third Circuit
LAR 34.1 on Panel Rehearing Granted and Opinion Vacated May 15, 2009

Submitted Pursuant to Third Circuit LAR 34.1(a) after Panel Rehearing.

Opinion filed: Sept. 10, 2009.

Dina R. Lassow, Esq., National Women's Law Center, Washington, D.C., for Appellant.

Caroline P. Liebenguth, Esq., Office of Allegheny County Law Department, Pittsburgh, PA, for Appellee.

Mary Catherine Roper, Esq., American Civil Liberties Union of Pennsylvania, Philadelphia, PA, for Amici–Appellants American Civil Liberties Union, American Civil Liberties Union of Pennsylvania, National Partnership for Women & Families, and Women's Law Project.

Witold J. Walczak, Esq., American Civil Liberties Union, Pittsburgh, PA, for Amici–Appellants American Civil Liberties Union, American Civil Liberties Union of Pennsylvania, National Partnership for Women & Families, and Women's Law Project.

Katherine Y. Cheung, Esq., Norris, Tysse, Lampley & Lakis, Washington, D.C., for Amici–Appellees Equal Employment Advisory Counsel and Chamber of Commerce of the United States of America.

Before: BARRY, SMITH and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

We granted rehearing in this case to determine the effect of the Lilly Ledbetter Fair Pay Act of 2009 on the timeliness of appellant Mary Lou Mikula's Title VII compensation claim. For the following reasons, we will reverse the District Court's decision that the claim is untimely as to the paychecks that Mikula received after June 20, 2006, and remand the matter for further proceedings. In addition, we will reinstate our March 24, 2009 decision as to Mikula's Equal Pay Act claim.

### I.

Mikula brought this lawsuit against her employer, Allegheny County, Pennsylvania ("the County"), alleging that it discriminated against her on the basis of gender by failing to give her a pay raise in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b) ("Title VII"), and by paying her less than a male employee who performed substantially equal work in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA").[1]

Mikula was hired as the grants coordinator for the Allegheny County Police Department on March 19, 2001. On September 10, 2004, Mikula drafted a memorandum to Police Superintendent Charles Moffatt, requesting that her job title be changed to "Grants and Project Manager" and that her salary be increased "to be equal or greater than [ ] Fiscal Manager [Ed Przbyla]." At that time, Przbyla's salary was approximately $7,000 per year higher than was Mikula's. Although Moffatt forwarded the request to the Human Resources department, Mikula never received a response.

Mikula again lobbied for a salary increase and a change in job title in October 2005, and soon thereafter told a Human Resources staff member that "she was not paid enough for what she did." Then, in

---

1. Mikula had argued that our non-precedential opinion included a finding that she, Mikula, had set forth a prima facie Equal Pay Act claim. Rather, our opinion held that the District Court improperly relied on a case that held that a plaintiff's additional duties necessarily made her work "not substantially equal" to the comparator's. See Pajic v. CIGNA Corp., Civ. A. No. 89–2404, 1990 WL 127797 (E.D.Pa.1990). Accordingly, we remanded the case for further proceedings.

March 2006, she filed a complaint with the County's Human Resources department complaining of gender and age discrimination. The complaint asserted, among other things, that a comparative male employee was paid $7,000 more than she was paid and that the discrimination started at the time she was hired. In March 2006, Mikula also filed the current cause of action, which, at that time, included only an EPA claim.

On August 23, 2006, Mikula received a letter from the County's Human Resources department informing her that it had concluded that her allegations of discrimination were unfounded and that her "current title and rate of pay are fair when compared with similar jobs." Thereafter, on April 17, 2007, Mikula filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that the County violated Title VII by paying her less than a male in her position would receive. After she received a right-to-sue letter, Mikula amended her District Court complaint to include a Title VII claim. The amended complaint alleged that since being hired in 2001, she was "paid substantially less compensation for equal work" performed by similarly situated male employees.

Title VII requires a claimant in Pennsylvania to file a charge with the EEOC within 300 days of an unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854–55 (3d Cir.2000). Accordingly, because Mikula filed her EEOC charge on April 17, 2007, any claims based on challenged acts that occurred before June 20, 2006 are time-barred. Before the parties filed their summary judgment briefs, the Supreme Court issued its decision in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007). In *Ledbetter*, the Court held that a claimant alleging discrimination based on a pay-setting decision must file a charge with the EEOC within 300 days after the discriminatory decision was made, and, in a shift from prior decisions, determined that the continuing effects of past employment decisions adopted with discriminatory intent do not transform a subsequent neutral employment act (such as a paycheck) into a present violation. *Id.* at 628–30, 127 S.Ct. 2162.

In its summary judgment brief, the County therefore argued that Mikula's Title VII pay disparity claim was untimely under *Ledbetter* because the allegedly discriminatory pay decision was made in 2001—when Mikula was hired at lower salary than that of Przbyla. Moreover, although Mikula discovered the pay disparity in 2004 at the latest, she did not file her EEOC charge until 2007—long after the 300–day charging period had expired. Mikula responded by distinguishing her case from *Ledbetter*, stating that "unlike Ms. Ledbetter," she alleged that the County's August 2006 investigation report was a discrete discriminatory pay decision made within the 300–day charging period.

The District Court granted summary judgment in favor of the County. It held that under the discovery rule, Mikula's Title VII claim accrued in September 2004 when she discovered the allegedly discriminatory pay discrepancy between herself and Przbyla. Because she did not file her EEOC charge until 2007, the claim was untimely, and to find that the statute of limitation was tolled each time she sought a pay raise would run counter to the *Ledbetter* decision. The District Court also found that the August 2006 investigation report did not constitute a pay decision.

Mikula appealed pro se from the District Court's order. She argued that the District Court erred in determining that the

August 2006 investigation report was not a discriminatory pay decision, stating that it was the first time that the County had addressed her complaints of disparate pay or her requests for a raise.

After the parties filed their appellate briefs, Congress passed the Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2 (codified as amended at 42 U.S.C. § 2000e–5(e)(3) (2009)) ("the Act"). Its purpose was to reinstate the law regarding the timeliness of pay compensation claims as it was prior to the *Ledbetter* decision, which Congress believed undermined statutory protections against compensation discrimination by unduly restricting the time period in which victims could challenge and recover for discriminatory compensation decisions. Accordingly, 42 U.S.C. § 2000e–5(e)(3)(A) was amended to state:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

The Act is retroactive and applies to all cases pending on or after May 28, 2007— the date when the Supreme Court issued the *Ledbetter* decision. Pub.L. No. 111–2, § 6, 123 Stat. 5.

In this Court's March 24, 2009 nonprecedential opinion, we affirmed the District Court's dismissal of Mikula's Title VII claim as untimely, stating that the August 2006 letter was not a pay decision or "other practice" because it merely provided Mikula with the results of its investigation of her internal discrimination complaint. The opinion continued by stating that to the extent Mikula was claiming that the refusals for requests for a raise were discriminatory acts, they were time-barred because they occurred more than 300 days before she filed her EEOC charge. We acknowledged the passage of the Act and explained that it did not change the result because it required the adoption of a discriminatory compensation decision rather than, as in this case, a request for a raise that was never answered.

On May 15, 2009, we granted Mikula's counseled Petition for Rehearing on the issue of whether her Title VII claim is timely under the Act. For the first time, Mikula defines her claim as a "classic paycheck accrual" case, which, she asserts, is exactly the type of claim that the Act was passed to protect. She claims that the County's lack of response to her raise requests qualify as discriminatory pay decisions or "other practices," as does the County's August 2006 investigation report. Under this rationale, each paycheck that Mikula has received is discriminatory and constitutes a new violation that renews the statute of limitation.

The American Civil Liberties Union, the American Civil Liberties Union of Pennsylvania, the National Partnership for Women and Families, and the Women's Law Project filed a joint amicus brief urging us to find that Mikula's Title VII claim is timely under the Act as a paycheck accrual case. Echoing Mikula, the amici argue that the rejection of Mikula's requests for pay raises affected her compensation and thus should be considered compensation decisions, and that the August 2006 investigation report constitutes a discriminatory pay decision or practice. Because Mikula filed her EEOC charge with-

in 300 days of receiving a discriminatory paycheck, the amici assert that her Title VII claim is timely.

On the other hand, the Equal Employment Advisory Counsel and the Chamber of Commerce of the United States of America filed a joint amicus brief asserting that our March decision appropriately found that Mikula's Title VII claim is untimely. The amici assert that periodic requests for money are not compensation decisions that trigger the Act's expanded filing period. Determining otherwise, the amici argue, would erode the limitation period for pay discrimination claims as employees could avoid untimely claims by periodically asking for a pay increase, thereby forcing employers to defend stale claims. The amici also ask the Court to consider Mikula's claim as a "comparable worth" claim, which is essentially a claim that a male employee was paid more money for doing a comparable job, and which is not covered by Title VII.

### II.

We have jurisdiction under 28 U.S.C. § 1291, and our review of the District Court's grant of summary judgment is plenary. *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 (3d Cir.2001). Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *DL Res., Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 216 (3d Cir.2007).

Title VII makes it an "unlawful employment practice" to discriminate "against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Under the Act, one instance in which an actionable unlawful employment practice occurs is "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A). Under Title VII, a claimant in Pennsylvania must file a discrimination charge with the EEOC within 300 days of an unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1); *Watson*, 235 F.3d at 854. As stated above, the Act was passed to restore the law that was in place prior to the *Ledbetter* decision. Thus, determining whether Mikula's claim is timely under the Act requires an understanding of pre-*Ledbetter* law.

The seminal case providing guidance as to the limitations period in Title VII cases is *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[2] *Morgan* explained that:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discrimina-

---

**2.** Mikula's counsel attempts to diminish the importance of *Morgan* by noting that it did not involve a compensation claim. However, *Morgan* considered "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside the [180– or 300–day] statutory time period." 536 U.S. at 105, 122 S.Ct. 2061. Further, *Morgan* spoke to the applicability of the continuing violation doctrine to discrete acts, specifically considering equal pay violations by reaffirming the statement that the Court made in *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)—that each discriminatory paycheck was a separate discriminatory act that could give rise to a Title VII action. 536 U.S. at 112, 122 S.Ct. 2061.

tory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

536 U.S. at 113, 122 S.Ct. 2061. As the Seventh Circuit stated in *Hildebrandt v. Illinois Department of Natural Resources*, "*Morgan* foreclosed the use of the continuing violation doctrine to incorporate untimely claims for discrete discriminatory actions even though they may be related to a timely claim." [3] 347 F.3d 1014, 1027 (7th Cir.2003) (internal citation and quotation omitted). The Seventh Circuit concluded that the *Hildebrandt* plaintiff could "only recover for the discriminatory pay received within the statute of limitations period.... She filed her charge 300 days after July 10, 1997 ... [therefore] she cannot reach any paycheck prior to" that date. *Id.* at 1028. *Hildebrandt* further explained that because the paychecks that the plaintiff received after July 10, 1997 reflected an out-of-time discriminatory raise, those paychecks gave rise to a new claim of an unlawful employment practice even though they were "simply a periodic implementation of an adverse decision previously made." *Id.* at 1029 (citing *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir.2003)).

Based on this framework, Mikula's Title VII pay discrimination claim is timely as to paychecks that she received after June 20, 2006 (300 days before she filed her EEOC charge) if they reflect a "periodic implementation" of a previously made intentionally discriminatory employment decision or "other practice." *See id.*; 42 U.S.C. § 2000e–5(3)(A). Mikula contends that the August 2006 investigation report and the County's failure to respond to her raise requests constitute compensation decisions or other practices.

■ Despite our earlier decision, we now hold that the failure to answer a request for a raise qualifies as a compensation decision because the result is the same as if the request had been explicitly denied. *See Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1013 (7th Cir.2003) (allowing a claim to proceed where the employer gave raises only to similarly situated white employees). We reaffirm, however, our earlier conclusion that the August 2006 investigation report does not constitute a compensation decision or other practice. While, in the abstract, the result of the investigation affected Mikula's compensation, finding that an employer can be liable under Title VII for investigating an internal discrimination complaint and communicating its findings to the employee would have the unfortunate effect of encouraging employers to ignore such complaints.

For the foregoing reasons, we will reverse the District Court's decision that the Title VII claim is untimely as to paychecks

**3.** Mikula's counsel seems to argue that the continuing violation doctrine should apply to Mikula's Title VII claim. Under this doctrine, if a plaintiff has filed a charge of discrimination "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993). As determined by *Morgan*, the doctrine does not apply to discrete, completed employment actions.

that Mikula received after June 20, 2006, and remand for further proceedings.