**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2908
_____

JUDY PAN,
Appellant

v.

TEMPLE UNIVERSITY HOSPITAL, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-03695)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 12, 2025
_____

Before: SHWARTZ, MATEY, and MONTGOMERY-REEVES, *Circuit Judges*

(Filed: January 5, 2026)
_____

OPINION[*]
_____

---

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Dr. Judy Pan sued Temple University Hospital asserting state and federal claims centered on discrimination and retaliation. The District Court entered summary judgment for Temple and, seeing no error, we will affirm.

**I.**

During Dr. Pan's surgical residency, Temple adopted a policy placing second-year residents scoring below the 20th percentile on the American Society of Plastic Surgery In-Service Examination ("ASPS Exam") on academic probation. Third-year residents falling below the 20th percentile were required to wait one year before seeking board certification. Dr. Pan fell below the minimum threshold as both a second- and third-year resident.

Dr. Pan was also subject to Temple's Resident Evaluation and Promotion Policy, which stated that Temple's "clinical competency committee may choose to place [a] resident on warning, remediation, or probation" if the resident's "performance is judged to be unsatisfactory." App. 50. In June 2018, the clinical competency committee found Dr. Pan left work after a surgical error without reading the patient's X-ray or properly passing along information about the "emergent issue" to other doctors, which violated both Temple's sign-out policy and "common sense." App. 533. Based on these shortcomings, and others, Temple placed Dr. Pan on clinical remediation and a performance improvement plan ("PIP").

While Dr. Pan was on academic probation in Fall 2018, she was accepted into a fellowship at Stanford University and applied for a California medical license. When

asked on the California Medical Board's form whether she had "ever been placed on probation for any reason," she answered "no." App. 54. However, when Temple filed its corresponding paperwork to the Board on behalf of Dr. Pan, it truthfully answered "yes" to the same question. App. 311. This mismatch caused the Board to inquire further with Temple, at which point Temple's program director, Dr. Sameer Patel, disclosed that Dr. Pan had also been placed on clinical remediation while making clear he still recommended Dr. Pan for a medical license.

The Board initially denied her application for an unrestricted license "due to failing to disclose required information . . . regarding being placed on academic probation," and offered a restricted license. App. 55. But with the assistance of Dr. Patel, who sent an additional letter "lobbying" the Board to "reverse its decision," the Board issued Dr. Pan an unrestricted license a few months later. App. 55. She completed the Stanford fellowship, an additional fellowship at the University of Tennessee, and a joint fellowship at Johns Hopkins University and the University of Maryland, where she is now employed as a surgeon.

Dr. Pan then filed suit against Temple asserting claims of sex discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951–963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code §§ 9-1100–1134 ("PFPO"). She also brought Pennsylvania contract claims.

3

The District Court entered summary judgment against Dr. Pan on all claims, and this appeal followed.[1]

## II.

The District Court did not err because Dr. Pan has failed to establish that material facts are in dispute and, viewing the facts in the light most favorable to Dr. Pan, Temple is entitled to judgment as a matter of law on all claims. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

First, Dr. Pan's discrimination claims[2] fail because placement on a clinical remediation plan, without more, is not an adverse employment action. *See Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009); *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). And truthfully reporting that status to the California Medical Board caused no harm; it was Dr. Pan's "fail[ure] to disclose . . . being placed on academic probation" that resulted in the temporary denial of an unrestricted license. App. 55. Indeed, Temple urged the Board that Dr. Pan should receive an unrestricted license.

Nor did Dr. Pan show that male residents were treated more favorably. Dr. Pan was the only third-year resident to fall below the minimum threshold on the ASPS exam

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367(a), and we have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Mikula v. Allegheny Cnty.*, 583 F.3d 181, 185 (3d Cir. 2009) (per curiam).

[2] The analyses under the PHRA and the PFPO claims are "identical" to those of Title VII. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (citation omitted); *see Szyper v. Am. Med. Resp. Mid-Atl., Inc.*, No. 21-2372, 2023 WL 2597585, at *2 (3d Cir. Mar. 22, 2023); *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020).

4

in her class, and the record contains no evidence of another resident failing to report a probationary status on a state medical board application. And contrary to Dr. Pan's assertions, when male residents were later put on academic probation, Temple also reported those statuses to state medical boards. Temple only disclosed that it had placed Dr. Pan specifically on "clinical remediation" in response to the California Medical Board's follow-up questions, App. 195, which negates any inference that Temple was "motivated" by "discriminatory animus." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

For substantially the same reasons, Dr. Pan's retaliation claim fails. Dr. Pan argues that because she complained about her placement on clinical remediation, Temple retaliated by (1) placing her on a PIP and (2) reporting her clinical remediation to the California Medical Board. To establish a retaliation claim, "a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Dr. Pan does not show that Temple took any adverse employment action, as noted above, nor a causal connection. The notice placing her on clinical remediation stated that "a program of Academic Remediation will be designed [and] . . . tailored to accommodate your individual learning style." App. 635. This predated her later complaint, meaning there is no causal nexus. Likewise, there is insufficient evidence of a

5

nexus between Dr. Pan's internal complaints and Temple's reporting of Dr. Pan's clinical remediation to the California Board. The report came over six months after Dr. Pan's last complaint, so the two events bear no "temporal proximity." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citation omitted); *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."). Nor was there "a pattern of antagonism in the intervening period" that would indicate causation. *Jensen*, 435 F.3d at 450 (citation omitted). A factfinder could only draw the opposite inference: that Temple supported Dr. Pan after her internal complaints, including by sending letters of recommendation to Stanford and subsequent fellowships, sending letters of support to the California Medical Board, and providing Dr. Pan with individualized attention during her residency so that she could reach her professional goals.

Finally, Dr. Pan brought claims for breach of contract, arguing that "Temple . . . improperly report[ed] her academic remediation and fail[ed] to comply with the applicable" guidelines when conducting her clinical evaluations. Opening Br. 13–14. These arguments fail for two reasons. First, Dr. Pan's 2016 employment contract "extend[ed]" to Temple "absolute immunity" and "release[d]" Temple "from any and all liability" for virtually any disclosure related to the residency including, for instance, matters related to "clinical competence," "patient care," and "education." App. 548. Second, even if Temple did violate applicable guidelines and the contractual release did

6

not cover those actions, Dr. Pan's claims founder because her alleged harms stemmed

from Dr. Pan's misrepresentation, *supra* at 4, not Temple's actions.[3]

* * *

For the foregoing reasons, we will affirm the District Court's judgment.

---

[3] Dr. Pan has abandoned her hostile work environment claim because she has not "presented [it] with supporting arguments and citations" in this appeal. *Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017) (citation and quotation marks omitted). Indeed, Dr. Pan's opening brief merely states the legal standard without any attempt to apply it to specific evidence, let alone provide citations. Even if her reply brief preserved the argument, no evidence suggests Temple permitted an "abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citation omitted).