In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1725

CYNTHIA KARTMAN, et al.,

*Plaintiffs-Appellees,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-00474—**William T. Lawrence**, *Judge.*

ARGUED SEPTEMBER 16, 2009—DECIDED FEBRUARY 14, 2011

Before CUDAHY, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* After a severe hailstorm struck central Indiana in April 2006, thousands of homeowners filed claims with State Farm Fire and Casualty Company[1]

---

[1] The defendants include the insurer State Farm Fire and Casualty Company, as well as its affiliates State Farm Mutual
(continued...)

for hail damage to the roofs of their homes. State Farm thereafter paid millions in property-damage claims, but not all of the policyholders were satisfied with their payments. Several brought this proposed class action in state court alleging breach of contract, bad-faith denial of insurance benefits, and unjust enrichment. The lawsuit sought damages and an injunction requiring State Farm to reinspect all class members' roofs pursuant to a "uniform, reasonable, and objective" standard for evaluating hail damage. State Farm removed the case to federal court.

The plaintiffs moved to certify a damages class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and also—or alternatively—a class for injunctive relief under Rule 23(b)(2). The district court issued a split decision on the motion. The court declined to certify a Rule 23(b)(3) damages class, holding that each plaintiff's claim of underpayment required an individualized factual inquiry on the merits. But the court concluded that a class claim for injunctive relief could proceed under Rule 23(b)(2); the court certified a class to determine whether State Farm should be required to reinspect policyholders' roofs pursuant to a "uniform and objective standard." State Farm appealed, arguing that certification under Rule 23(b)(2) is not permissible for this action.

---

[1] (...continued)

Automobile Insurance Company and State Farm General Insurance Company. State Farm Fire and Casualty Company issued the homeowner's policies at issue in this case. We use "State Farm" to refer collectively to all three defendants.

State Farm is right. This case is not appropriate for class certification under Rule 23(b)(2). As an initial matter, the plaintiffs' claim for injunctive relief suffers from some serious conceptual confusion. This is a suit for breach of contract and bad-faith denial of insurance benefits, the remedy for which is damages. State Farm had a contractual obligation to pay policyholders for their hail-damage losses and a corresponding duty in tort not to deny claims in bad faith. But there is no contract or tort-based duty requiring the insurer to use a particular standard for assessing hail damage. As such, there is no independent cognizable wrong to support a claim for injunctive relief requiring State Farm to conduct a class-wide roof reinspection pursuant to a "uniform and objective" standard.

More generally, certification of a class under Rule 23(b)(2) is permissible only when class plaintiffs seek "final injunctive relief" that is "appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Here, the requested injunction is neither "appropriate" nor "final." The relief is not appropriate for several reasons, not least of which is that the normal remedy for wrongful denial of insurance benefits is damages, not equitable relief. Moreover, the injunction envisioned by the plaintiffs would in no sense be a final remedy. A class-wide roof reinspection would only lay an evidentiary foundation for subsequent individual determinations of liability and damages.

Finally, certification of an "issues" class under Rule 23(c)(4) is neither sought nor appropriate here. The

particular standard State Farm used to evaluate policy-holders' hail damage is not an element of any case presented by these plaintiffs for final injunctive relief. In some circumstances, the applicable standard of care might be a proper separable issue, but in this case, the ultimate relief sought is money damages, and thus the requirements for certification of a damages class under Rule 23(b)(3) must be satisfied. Here, they were not. Accordingly, we reverse the district court's order and remand with instructions to decertify the class.

## I. Background

State Farm issues homeowner's insurance providing coverage for "accidental direct physical loss to property," including damage resulting from windstorms or hail. In April 2006 a severe hailstorm swept through the Indianapolis metropolitan area causing widespread property damage. Some 49,000 State Farm policyholders filed claims for property damage as a result of the storm. Claims under homeowner's policies were adjusted based on individualized assessments of the homeowner's property damage. State Farm has guidelines to aid adjustors in determining a homeowner's loss but does not use a single, uniform test for assessing hail damage.

Once an adjustor provides a property-damage estimate, the policyholder is permitted to contest that decision in several ways. First, an insured may request that another insurance adjustor provide an independent evaluation. Also, specifically for losses in connection with the April 2006 hailstorm, State Farm permitted

dissatisfied policyholders to challenge their damage estimates in arbitration proceedings.[2] Through March 18, 2008, State Farm used these procedures to adjust and pay more than $263 million in property-damage claims resulting from the hailstorm.

In March 2007 several policyholders filed this lawsuit in state court asserting claims for breach of contract, bad-faith denial of insurance benefits, and unjust enrichment arising out of State Farm's adjustment of their claims for hail damage to the roofs of their homes. The suit was brought as a class action on behalf of approximately 7,000 policyholders and alleged that State Farm engaged in pervasive undercompensation of roof-damage claims stemming from the April 2006 hailstorm. As part of their theory that State Farm breached its contract and tort-based duties to policyholders, the plaintiffs alleged that the insurer failed to implement a uniform "reasonable, objective" standard for assessing hail-damaged roofs.

To highlight the problems associated with State Farm's ad hoc method for evaluating hail-damage claims, the plaintiffs cited the experiences of class representatives Karen Stergar and Hong Gao.[3] Stergar alleged that when

---

[2] Initially, the arbitration results were binding on all parties. However, in January 2007 State Farm revised this policy so that the arbitration results were only binding on State Farm.

[3] Throughout the course of this litigation, the number of named plaintiffs has not remained constant. At the time this appeal was filed, 17 named plaintiffs remained, including plaintiff

(continued...)

she submitted her claim, State Farm sent several insurance adjustors to assess her roof damage and all provided vastly different opinions. Stergar claims that the first adjustor did not even step out of his car, yet determined the claim was only worth $700. Dissatisfied with this offer, Stergar requested another opinion. State Farm then sent a second adjustor who climbed on the roof and suggested that Stergar needed an "entire new roof," but stated that he could not provide a compensation figure until a "ropes-and-ladders team" examined the damage. When the ropes-and-ladders team arrived, it disagreed with the second adjustor's opinion and concluded instead that Stergar's roof sustained $3,000 worth of damage to shingles, vents, and a downspout.

The State Farm adjustor who examined Gao's roof determined that there was some damage to vents, gutters, and the home's left and rear elevations, and also that some screens on the left and rear elevations needed replacing. State Farm paid $434.08 for these repairs. Gao was not satisfied; she believed she needed a completely new roof. Sometime later, she discovered an interior leak in her house and contacted State Farm. The insurer determined that the April 2006 hailstorm caused the leak and paid for this repair. Gao believed the leak was evidence that her roof damage was ex-

---

[3] (...continued)
Cynthia Kartman, the first listed plaintiff in the caption of this case.

tensive and that State Farm should pay to install a new roof. She eventually replaced her roof at her own expense.

The plaintiffs sought compensatory and punitive damages and also requested injunctive relief in the form of an order requiring State Farm to reinspect all class members' roofs pursuant to a uniform and objective standard for evaluating hail damage. State Farm removed the suit to federal court pursuant to 28 U.S.C. § 1332(d). The plaintiffs then moved for class certification under both Rules 23(b)(2) and (b)(3).

The district judge declined to certify a Rule 23(b)(3) damages class based on a lack of common issues of fact; each plaintiff's claim of underpayment required individualized determination on the merits. But the judge certified a class under Rule 23(b)(2) to adjudicate the request for an injunction requiring State Farm to conduct a class-wide roof reinspection pursuant to a "uniform and objective standard for evaluating hail damage claims." The judge added that he would use the Rule 23(b)(2) injunction proceeding to assess State Farm's liability for damages, and that if State Farm was found liable, he would reconsider whether to certify a Rule 23(b)(3) damages class or a subclass. The judge defined the Rule 23(b)(2) injunction class as including all policyholders who submitted insurance claims resulting from the April 2006 hailstorms and did not receive sufficient compensation for an "entirely new roof at State Farm's expense, minus any applicable deduction or depreciation." Excluded from the class were those individuals who had resolved their claims with

State Farm via binding arbitration, settlement agreement, or a judgment in state or federal court. State Farm sought interlocutory review of the district court's certification order pursuant to Rule 23(f), and we granted the petition.

## II. Discussion

We review the district court's decision to certify a injunction class under Rule 23(b)(2) for abuse of discretion. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008). Ordinarily, the district court has substantial latitude in the management of complex class-action litigation. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (district courts may devise "imaginative solutions" to resolve problems created by class actions). Here, however, the class-certification decision rests on a legal error. The judge declined to certify a damages class under Rule 23(b)(3) but thought the claim for injunctive relief was appropriate for class treatment under Rule 23(b)(2). Underlying this split determination is a legal misunderstanding about the nature of the plaintiffs' claims; "'purely legal' determinations made in support of [a class certification] decision are reviewed de novo." *Andrews*, 545 F.3d at 573.

### A. Clarifying the Claims

A central problem with the court's order is that it misconceptualizes the claims in this case. Although the complaint invokes several legal theories, the plaintiffs have only one cognizable injury—underpayment of their

insurance claims for hail damage to their roofs—and prospective injunctive relief is not a proper remedy for that kind of injury. Instead, this is simply an action for damages—not the dual remedies of an injunction plus damages—and if suitable for class adjudication at all, may be certified only under Rule 23(b)(3). *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999).[4] Because the district court correctly denied Rule 23(b)(3) certification based on the particularized facts of each plaintiff's claim, this class action should have ended there.

Nonetheless, in an apparent effort to make their case more amenable to class certification, the plaintiffs

---

[4] With extremely limited exceptions, putative class members in suits for monetary damages are entitled to notice of the pending action and an opportunity to opt out. *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 897 (7th Cir. 1999) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)). The opt-out mechanism allows plaintiffs who have suffered greater-than-average damages to sue on their own and pursue a larger-than-average monetary award. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). Because the notice and opt-out procedural safeguards automatically attach to all classes certified under Rule 23(b)(3), damages actions are generally certified under this subdivision. FED. R. CIV. P. 23(c)(2)(B). In contrast when an injunctive remedy is sought, members of the putative class are typically not entitled to opt out because the injunction will usually have the same effect on all members of the class as individual suits would. FED. R. CIV. P. 23(c)(2)(A); *In re Allstate*, 400 F.3d at 506.

included a separate request for injunctive relief in their complaint. For factual support they alleged that State Farm failed to implement a "reasonable, objective" standard to assess the hail damage to their roofs. This allegation, and the accompanying request for injunctive relief, created the illusion that State Farm had two distinct legal obligations arising under the express or implied terms of the insurance contract: an obligation to compensate insured homeowners for the hail damage to their roofs *and* an independently actionable duty to examine all hail-damaged roofs pursuant to a uniform and objective standard.

In essence, then, the plaintiffs claimed that they suffered two separate injuries—underpayment of their hail-damage claims *and* a violation of a distinct right to have their hail-damaged roofs evaluated under a uniform and objective standard. To the extent that the first injury proved inappropriate for class-wide adjudication (because each policyholder's claim was unique), the second injury (so the argument goes) was common to the class and could be redressed by an injunction ordering a class-wide reinspection.[5] This parsing of remedies gave the plaintiffs a fallback position on the class-certification question. If they failed to

---

[5] Even if State Farm had a cognizable legal obligation to use a uniform and objective standard for evaluating hail-damage claims, an equitable remedy would not necessarily follow. A remedy in equity is awarded in exceptional circumstances, and as we explain, *infra*, the claims in this case do not satisfy the traditional test for injunctive relief.

win certification of a damages class under Rule 23(b)(3) based on lack of commonality, they could still argue for an injunction class under Rule 23(b)(2) to adjudicate whether State Farm breached an obligation to use a uniform and objective standard to evaluate hail-damaged roofs.

This technique of recasting a straightforward claim for damages as a claim for damages *and* injunctive relief runs into trouble on some basic principles of common law—most fundamentally that a claim of injury is not cognizable unless it results from the breach of a recognized legal duty owed to the plaintiff. *See, e.g., Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997); *Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996). A noncognizable claim can support neither a judgment nor a remedy. *See Jones v. Reagan*, 696 F.2d 551, 554 (7th Cir. 1983). Simply put, State Farm had no independent duty— whether sounding in contract or tort—to use a particular method to evaluate hail-damage claims. State Farm's alleged underpayment of the plaintiffs' hail-damage claims is a cognizable wrong in both contract and tort, but the *method* it uses to adjust claims is not independently actionable.[6]

---

[6] Review of the class-certification decision in this case requires a preliminary look at the merits. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (when questions concerning class certification overlap with the merits, the court may examine the merits as necessary to resolve the threshold questions).

The essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy, thereby shifting the risk of loss from the insured to the insurer. *See, e.g.*, *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 228 (1979); 1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 1:6 (3d ed. 2009) [hereinafter COUCH] (defining insurance); 43 AM. JUR. 2D *Insurance* § 2 (2010). Insurance entails a promise to pay covered losses, not a covenant to use a particular standard for evaluating property damage. If a given policyholder was fully compensated for the damage attributable to the hailstorm, then State Farm will have satisfied its contractual obligation *regardless* of whether it used a "uniform and objective" *or* an ad hoc standard to assess the damage. State Farm's allegedly inconsistent standard for evaluating hail damage might be evidence tending to show that some policyholders received inadequate compensation for their losses, but does not by itself establish liability for breach or supply a basis for injunctive relief. *See Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 365 (Ind. App. Ct. 2008); *see also U.S. Valves, Inc. v. Dray*, 190 F.3d 811, 814 (7th Cir. 1999) (Indiana law); *Parke State Bank v. Akers*, 659 N.E.2d 1031, 1034-35 (Ind. 1995) (it is the plaintiff's burden to prove injury or loss resulting from defendant's breach of contract).

The same analysis applies to the plaintiffs' claim for bad-faith denial of insurance benefits. An insurer has an obligation of "good faith and fair dealing with respect to the discharge of [its] contractual obligation" to the

insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). Under Indiana law this obligation arises in tort and includes the "obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* The plaintiffs contend that even if State Farm lacked a contractual duty to inspect their roofs pursuant to a "uniform and objective" standard, the insurer's duty of good faith required it to do so.

This argument reflects a fundamental misunderstanding of the tort of bad faith. As relevant here, an insurer breaches its duty of good faith when it offers "no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002); *accord Hickman*, 622 N.E.2d at 520. The bad-faith claim in this case is premised upon allegations that State Farm undercompensated the plaintiffs for the hail damage to their roofs. For purposes of the tort, this amounts to a claim that the insurer engaged in an unfounded refusal to fully pay the plaintiffs' claims. There are no allegations suggesting deceit or unfair advantage as the basis for the bad-faith claim. It is true that the Indiana Supreme Court noted in *Hickman* that the types of bad faith it had identified—bad-faith delay or denial of payment, deceit, or taking unfair advantage—were not exhaustive. *See Hickman*, 622 N.E.2d at 519. But the plaintiffs have cited no authority for the proposition that an insurer's use of an ad hoc loss-assessment standard, standing alone, qualifies as an independent basis for bad-

faith liability. *See Hickman*, 622 N.E.2d at 520 ("[T]he lack of diligent investigation alone is not sufficient to support an award.").

Instead, the bad-faith claim asserted here is a garden-variety one: Bad faith arises when an insurance claim is wrongfully denied *and* the insurer knows there is "no rational, principled basis" for denying the claim. *Id.*; *see also Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 677 (Ind. Ct. App. 2007) ("[A] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." (quotation marks omitted)). Thus, to prove State Farm committed the tort of bad faith, the plaintiffs must establish that their claims were underpaid—or wrongfully denied—in the first place. *See HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259, 264 (Ind. App. Ct. 2005) ("[T]o determine whether [the insurer] breached the covenant of good faith and fair dealing necessarily requires that the factfinder determine whether it wrongly denied coverage . . . ."). This requirement alone bars class certification because it cannot be established on a class-wide basis. Again, State Farm's inconsistent approach to hail-damage estimating (if it was inconsistent) might be evidence tending to show that the insurer underpaid some hail-damage claims. But it does not independently establish liability or support a separate injunctive remedy.[7]

---

[7] Moreover, even if plaintiffs are able to prove their bad-faith claims, the remedy for State Farm's violation of the *Hickman*
(continued...)

Stated differently, the plaintiffs cannot prove that their hail-damage claims were denied in bad faith without first showing that they received inadequate coverage for their loss. *See id.; see also* 1 COUCH § 1:6. This requires proof that a compensable loss occurred and was underpaid or not paid at all—a claim-specific inquiry that turns on the nature of the damage to each plaintiff's roof and the amount State Farm paid to repair it. And as the district court properly held in declining to certify a Rule 23(b)(3) damages class, the class-action device is not appropriate for resolving such highly individualized questions of fact. *See Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (only genuinely common issues, identical across all claimants, are suitable for class resolution).

Finally, we need not spend much time on the claim for unjust enrichment. In Indiana, as elsewhere, "the existence of an express contract precludes recovery under the theory of unjust enrichment." *T-3 Martinsville, LLC v. U.S. Holding, LLC*, 911 N.E.2d 100, 123 (Ind. Ct. App. 2009). Because the class plaintiffs had written insurance policies with State Farm, their unjust-enrichment claim is not actionable and cannot form the basis for the remedy of an injunction.

At bottom, the actionable claims in this case are for State Farms's alleged underpayment of the plaintiffs' hail-

---

[7] (...continued)
duty of good faith would be damages, not equitable relief. *See Hickman*, 622 N.E.2d at 519-20.

damage claims—nothing more, nothing less. The insurer's use of an ad hoc loss-assessment standard may be evidence that it underpaid in some cases but is not an independently actionable wrong. With this conceptual clarification of the plaintiffs' claims, we now proceed to the issue of class certification under Rule 23(b)(2).

## B. Certification of an Injunction Class Under Rule 23(b)(2)

A case may be certified as a class action under Rule 23(b)(2) where the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Subsumed in this rule are at least two independent requirements: The contemplated equitable relief must be (1) "appropriate respecting the class as a whole" and (2) "final." Here, the contemplated injunction will provide neither "appropriate" nor "final" relief for the alleged underpayment of the plaintiffs' hail-damage claims.

The proposed injunction would not be an appropriate remedy for any single plaintiff, let alone for the class as a whole. To begin with, the plaintiffs cannot satisfy the test for a remedy in equity. An injunction requires a showing that: (1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiffs and defendant; and (4) the public interest would be well served by

the injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (outlining traditional test for permanent injunctive relief); *see also* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 2.9 (2d ed. 1993). The third part of this test—the balance of hardships—takes on heightened importance when the plaintiff requests a "mandatory injunction," that is, an injunction requiring the defendant to perform an affirmative act. *See* DOBBS, *supra* § 2.9. A mandatory injunction imposes significant burdens on the defendant and requires careful consideration of the intrusiveness of the ordered act, as well as the difficulties that may be encountered in supervising the enjoined party's compliance with the court's order. *Id.*

This case cannot satisfy the basic requirements for an injunction. First, the plaintiffs have not suffered irreparable harm. Their injury—the underpayment of their insurance claims—is easily remedied by an award of money damages, a fully adequate remedy. It follows that class certification under Rule 23(b)(2) is necessarily improper. The Advisory Committee Notes to Rule 23 underscore this basic point, noting that certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." FED. R. CIV. P. 23 advisory committee's note (1966).

Injunctive relief is also not "appropriate" because the hardships of the contemplated injunction would fall disproportionately on State Farm. (This point also demonstrates the "finality" problem.) As proposed, the injunction would require State Farm to carry out a class-

wide roof reinspection. The district court defined the class to include all State Farm policyholders who filed insurance claims for damage resulting from the April 2006 hailstorm and did not receive "an entirely new roof." It is quite possible that some—perhaps many—of the policyholders who did not receive an "entirely new roof" were nonetheless fully compensated for their hail-damage losses. Yet these policyholders would be entitled to a reinspection at State Farm's expense. Because the April 2006 hailstorm generated some 7,000 roof-damage claims, the cost of complying with such an injunction would be immense.

Supervising compliance with the envisioned injunction would be administratively challenging. Federal Rule of Civil Procedure 65(d) mandates that every injunction "state its terms specifically" and "describe in reasonable detail" the "act or acts restrained or required" so that the enjoined party is fairly apprised of his responsibilities and the court can objectively assess compliance. FED. R. CIV. P. 65(d)(1); *see also Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008) (injunction may not be so vague to operate at a "stratospheric level of abstraction"). As currently envisioned, the injunction would require State Farm to reinspect the class members' roofs pursuant to a "reasonable, uniform, and objective standard." This is far too general to satisfy Rule 65(d), yet to be more specific would essentially require the court to write an insurance-adjustment code.

Finally, as a practical matter, it's hard to see what purpose would be served by a class-wide roof reinspec-

tion. For example, at least four of the named class plaintiffs, including Gao, have replaced their roofs. A reinspection would serve absolutely no purpose for this subclass of plaintiffs.[8] It is very likely that many others have already had their roofs repaired using the proceeds of their insurance payments. In short, the proposed injunction is not merely inappropriate, it is broadly impractical.

There is a second fundamental reason why this case is unsuitable for class certification: An injunction would not provide "final" relief as required by Rule 23(b)(2). An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000) (class certification not permitted where class members "have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages"). As we have

---

[8] This may constitute another barrier to class certification. Where a class is not cohesive such that a uniform remedy will not redress the injuries of *all* plaintiffs, class certification is typically not appropriate. *See Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008); *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000) (class cohesion destroyed when case depends on adjudication of facts particular to any subset of class or the necessary remedy differentiates materially among the class members); *but see In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (permitting class certification even though a portion of the class would receive no benefit from the contemplated injunction).

explained, the plaintiffs have no independently actionable claim based on State Farm's failure to use a uniform and objective standard for evaluating hail damage. Properly understood, the contract and tort causes of action here are straightforward claims for underpayment of insurance benefits. As such, State Farm's liability cannot be determined on a class-wide basis, but instead requires individualized factual inquiries into the merits of each policyholder's claim. Far from being final relief, a class-wide roof reinspection would only initiate thousands of individualized proceedings to determine breach and damages. *See Andrews*, 545 F.3d at 577.

Seen in this light, the contemplated injunction would essentially have the effect of shifting the burden to State Farm to prove elements of the plaintiffs' claims. It goes without saying that no plaintiff is entitled to recover except on proof of breach and damage. *See, e.g.*, *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004) (to prevail on contract claim, plaintiff must prove "the existence of a contract, the defendant's breach thereof, and damages"); *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) (as fundamental principle, tort liability requires proof of harm). Ordering State Farm to reinspect roofs on a class-wide basis amounts to an order requiring the insurer to establish whether it underpaid any of its policyholders, and if so, by how much.

The plaintiffs argue that disallowing an injunction class under Rule 23(b)(2) would be inconsistent with *Allen v. International Truck & Engine Corp.*, 358 F.3d 469 (7th Cir.

2004). There, a group of employees sued their employer for racial discrimination and sought both injunctive relief and damages. We held that certification of a Rule 23(b)(2) class for injunctive relief was appropriate even if the related damage claims required subsequent individual adjudication. 358 F.3d at 470. Unlike this case, however, the remedies sought by the *Allen* plaintiffs were designed to cure two distinct injuries: past and future discrimination. Monetary damages, if awarded, would compensate the employees for the discrimination they had already suffered; damages would provide a final retrospective remedy for *that* injury. An injunction, on the other hand, would require the employer to cease its discriminatory conduct, providing a final *prospective* remedy for ongoing and future discrimination. Here, in contrast, the plaintiffs have suffered only one cognizable injury—State Farm's alleged underpayment of their hail-damage claims—and a retrospective damages remedy would provide final, adequate relief for this singular harm.

The plaintiffs also contend that their claim for injunctive relief is analogous to "medical monitoring" injunctions in class actions brought by smokers against tobacco companies. In this context, other circuits have indicated that Rule 23(b)(2) certification may be appropriate where the action seeks an injunction requiring the defendant to fund a medical-monitoring program for detecting the onset of latent disease in the plaintiff class. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998) (implicitly suggesting that a court-ordered medical-monitoring program could be characterized as

final injunctive relief, but ultimately denying certification under Rule 23(b)(2) on other grounds); *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) (indicating Rule 23(b)(2) certification for a medical-monitoring claim may be legally permissible). The plaintiffs maintain that these medical-monitoring cases demonstrate that a Rule 23(b)(2) class may be certified even if the requested injunction will not provide truly final relief. Because the injunction they seek would only assess, not compensate, their hail damage, the plaintiffs compare it to a medical-monitoring injunction and insist it is likewise sufficiently final to satisfy the requirements of Rule 23(b)(2).

This argument misses the mark. A medical-monitoring injunction is designed to relieve class plaintiffs of the prospective costs associated with medical supervision. *Barnes*, 161 F.3d at 139. In this sense, it is a final remedy because it permanently defrays *future* costs of medical supervision.[9] In contrast, the injunction the plaintiffs

---

[9] Not all forms of medical monitoring are equitable in nature, and courts have warned that certification under Rule 23(b)(2) is inappropriate if the injunction is a "disguised request for compensatory damages*." Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 131 (3d Cir. 1998); *see also Day v. NLO, Inc.*, 144 F.R.D. 330, 335-36 (S.D. Ohio 1992), *rev'd on other grounds*, 5 F.3d 154 (6th Cir. 1993). For example, a court order requiring a defendant to pay a plaintiff a sum of money for the purpose of medical monitoring is essentially an award of damages and therefore cannot be awarded in a Rule 23(b)(2) proceeding. The same

(continued...)

request here would not perform any prospective function at all; it is designed to assess past property damage for purposes of determining liability for individual retrospective compensatory monetary remedies. In short, the plaintiffs are not really interested in final *prospective* equitable relief at all; they are singularly focused on recovering a retrospective damages remedy, and Rule 23(b)(3), not (b)(2), governs certification of a damages class.

Before concluding, we offer an observation about an anomaly in the district court's class-certification order. The judge said he would use the Rule 23(b)(2) proceeding to assess State Farm's "liability" on the damages claims. Perhaps by this the judge meant that he intended to use the Rule 23(b)(2) class proceeding to adjudicate only those common issues pertaining to State Farm's liability for breach of contract and bad faith, while reserving the more claimant-specific issues—such as the calculation of damages—for subsequent individual adjudication. However, as we have explained, Rule 23(b)(2) governs class claims for final injunctive or declaratory relief and is not appropriately invoked for adjudicating common issues in an action for *damages*. A damages

---

[9] (...continued)

can be said for a court order requiring the defendant to pay the plaintiffs' medical expenses directly. However, if the court establishes its own medical-monitoring program managed by court-appointed trustees, the remedy could then be characterized as injunctive even if the defendants are required to pay for the program. *See Barnes*, 161 F.3d at 131-32.

class may be certified under Rule 23(b)(3) and particular issues identified for resolution on a class-wide basis pursuant to Rule 23(c)(4). FED. R. CIV. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). Or, in an appropriate case, a Rule 23(b)(2) class *and* a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 392-93 (7th Cir. 2010). As we have explained, that is not the case here; neither Rule 23(b)(3) nor Rule 23(c)(4) is implicated.

For the foregoing reasons, we REVERSE and REMAND with instructions to decertify the Rule 23(b)(2) class.